**No. 25-12194**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

BRENDON LAVANTIA GARRETT,

*Plaintiff – Appellant,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.

*Defendant – Appellee.*

Appeal from the United Stated District Court
for the Northern District of Florida

No. 4:24-cv-00143-AW-MAF

---

## PLAINTIFF-APPELLANT BRENDON LAVANTIA GARRETT'S
## REPLY BRIEF

---

Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310

1

E: ctillman@consumerjustice.com
*Attorneys for Appellant Brendon Lavantia Garrett*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Plaintiff-Appellant Brendon Lavantia Garrett ("Plaintiff"), by and through the undersigned counsel, and pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, hereby files this Certificate of Interested Persons and Corporate Disclosure Statement. Plaintiff is not a publicly held corporation and has no parent corporations, affiliates, or subsidiaries with an interest in the outcome of this case. Identifiable interested parties to the action are:

| | |
|---|---|
| Brendon Lavantia Garrett | Plaintiff-Appellant |
| Tarek N. Chami | Counsel for Plaintiff |
| Catherine Tillman | Counsel for Plaintiff |
| Experian Information Solutions, Inc. | Defendant-Appellee |
| Caleb P. Redmond | Counsel for Defendant Experian |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................5

**INTRODUCTION** ................................................................................................6

**ARGUMENT** .......................................................................................................8

  **I.   The district court erred by failing to recognize that there was a jury question about the reasonableness of Experian's reporting procedures because there was evidence that, in developing those procedures, Experian omits any auditing or cross-checking that could discover mixed files, like the one that combined information about Plaintiff and his brother.**......................8

    A.  *When an FCRA plaintiff establishes that a CRA's reporting was inaccurate, he can prove that the CRA failed to follow reasonable procedures without identifying specific alternative procedures that would have avoided the inaccuracy.* ...................................................................................................9

    B.  *The record here includes evidence that Experian's reporting procedures were unreasonable because they omitted any auditing or cross-checking function to proactively identify the mixed files that, according to Experian's own admissions, would inevitably be created by its rules for matching consumer information with individual consumers*............................................14

  **II.   A jury could find that Experian was liable for a willful violation of § 1681e(b) because it deliberately omitted any procedures to audit or cross-check for mixed files while knowing that mixed files were an inevitable consequence of its matching process.**.............................................................23

  **III.   Plaintiff had sufficient evidence to permit a jury to find that Experian's mixed-file inaccuracies were, the very least, a substantial factor in adverse credit decisions, emotional distress, and reputational injuries.** ..25

**CONCLUSION AND RELIEF REQUESTED** .....................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bradshaw v. Reliance Standard Life Ins. Co.*, 707 F. App'x 599 (11th Cir. 2017).28
*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991)
....................................................................................................... passim
*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997)...............................23
*Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361 (N.D. Ga. 2005)......... 25, 27
*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994)....................................23
*Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638 (S.D. Ala. 2007)...................... 13, 23
*Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021)...................... 21, 22
*Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F. Supp. 962 (S.D. Ohio 1983) 11, 12, 18
*Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) ...................... 10, 11, 12
*Rumbough v. Experian Info. Sols., Inc.*, No. 6:12-cv-811-Orl-22DAB, 2014 U.S. Dist. LEXIS 186329 (M.D. Fla. Jan. 8, 2014) .......................................................13
*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)...............................................24
*Sarver v. Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004) ................................22
*Stewart v. Credit Bureau, Inc.*, 734 F.2d 47 (D.C. Cir. 1984).................... 11, 12, 23

**Statutes**

15 U.S.C. § 1681 ........................................................................................................7
15 U.S.C. § 1681e(b) ..................................................................................... passim

**Treatises**

KEETON, ET AL., PROSSER AND KEETON ON TORTS § 41, at 266-68 (5th ed. 1984)..26
*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .............................................28

## **INTRODUCTION**

The record establishes certain crucial facts beyond question. Defendant-Appellee Experian Information Solutions, Inc. ("Experian") creates numerous mixed files as an inevitable consequence of its "flexible" procedures for matching consumers with the consumer information supplied by furnishers. Because these files associate one consumer with information that belongs to a different consumer, they are always inaccurate. Experian knows that its database contains many mixed files, but it does not take any proactive measures to screen or review that database to identify mixed files. Only after its inaccurate reporting has harmed a consumer, and only after that consumer has submitted a dispute, does Experian deign to apply a set of specific procedures to prevent this particular mixed file from recurring. Experian maintained a single file that mixed credit history information for Plaintiff-Appellant Brendon Lavantia Garrett ("Plaintiff") and his twin brother for approximately nineteen years.

Throughout this case, Experian has argued that, despite these facts, its reporting procedures are reasonable as a matter of law, because the realities of matching items of consumer information with individual consumers make it impossible for any consumer reporting agency ("CRA") to avoid creating some mixed files. The district court adopted Experian's conclusion. But the reasoning behind this conclusion depends upon the fallacious assumption that a CRA's duties

under 15 U.S.C. § 1681e(b) begin and end with its design of its matching process. This conclusion overlooks the evidence showing that Experian could do something to mitigate its mixed file problems after the matching process, but that it simply chooses not to do so, preferring to let consumers operate as its quality control agents for mixed files. Because a jury could find that it was unreasonable for Experian to omit any auditing or cross-checking from its reporting procedures, it was error for the district court to grant summary judgment to Experian on Plaintiff's cause of action under § 1681e(b).

In addition, it was error for the district court to rule that, as an alternative ground for summary judgment, Plaintiff could not prove that he was entitled to any actual or statutory damages. Plaintiff had evidence to show that Experian's admittedly inaccurate reporting was a substantial factor in causing adverse credit decisions, emotional distress, and reputational harm; and he had evidence to show that Experian could be liable for the damages that flow from a willful violation of § 1681e(b) because its chosen reporting procedures reflected a reckless disregard for the mandate for accuracy imposed by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

# ARGUMENT

**I.    The district court erred by failing to recognize that there was a jury question about the reasonableness of Experian's reporting procedures because there was evidence that, in developing those procedures, Experian omits any auditing or cross-checking that could discover mixed files, like the one that combined information about Plaintiff and his brother.**

As Plaintiff has argued, the district court committed a two-fold error when concluding that Experian's reporting procedures were reasonable as a matter of law. First, it imposed an excessive and erroneous evidentiary burden on Plaintiff by ruling that Plaintiff could prove that Experian's procedures were unreasonable only by coming forward with evidence of specific alternative procedures that Experian could have followed to avoid mixing Plaintiff's information with his brother's. Second, regardless of the nature of Plaintiff's evidentiary burden, the district court failed to recognize that there was, in fact, substantial evidence to show that Experian chose to omit specific procedures that could have avoided the mixed-file problem. Moreover, these procedures did not, as the district court suggested, require an unreasonably exacting set of rules for determining which item of information should go in which consumer file. In its responsive brief, Experian tries to distract from these errors by misrepresenting Plaintiff's position and by misstating what the evidence shows about its reporting procedures, but Experian's efforts on these points are unavailing.

A.      *When an FCRA plaintiff establishes that a CRA's reporting was inaccurate, he can prove that the CRA failed to follow reasonable procedures without identifying specific alternative procedures that would have avoided the inaccuracy.*

Contrary to the district court's assertion and Experian's arguments, an FCRA plaintiff is not required to offer evidence of alternative reporting procedures to create a jury question about whether a CRA's reporting procedures were reasonable. Summary Judgment Order [Dkt. No. 82] at 4-6; Experian's Brief at 25-27. As this Court and other federal circuit courts have held, in a cause of action under § 1681e(b), the question about the reasonableness of a CRA's procedures goes to a jury when the plaintiff shows that there is an inaccuracy and when there is evidence to cast doubt on the reasonableness of the CRA's procedures. That evidence of unreasonableness can include evidence of alternative procedures, but such evidence is not an absolute requirement.

In *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991), this Court described what a plaintiff must do to create a jury question about reasonableness. "[T]o make out a prima facie violation of section [1681e(b)], the [FCRA] implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate information.'" *Id*. at 1156 (footnote omitted). Once a plaintiff makes this evidentiary showing, a CRA must make its own responsive evidentiary showing, and it "can escape liability

if it establishes that an inaccurate report was generated by following reasonable procedures." *Id.*[1] When a CRA has some evidence to show the reasonableness of its procedures, the ultimate determination of reasonableness "will be a jury question in the overwhelming majority of cases." *Id*.

The district court and Experian appear to take the position that, when a CRA makes any evidentiary showing that its reporting procedures were reasonable, it is entitled to summary judgment unless the plaintiff specifically identifies alternative procedures that would have prevented the inaccuracy. *See* Summary Judgment Order [Dkt. No. 82] at 4 (concluding that Plaintiff failed to carry his evidentiary burden by

---

[1] Plaintiff's opening brief contains a typographical error on this point, attributing a quotation to *Cahlin* when that quotation actually came from the Third Circuit's understanding of *Cahlin* as expressed in *Philbin v. Trans Union Corp.*, 101 F.3d 957, 965 (3d Cir. 1996). *See* Plaintiff's Opening Brief at 45-46. Experian correctly identified this citation error. Experian's Brief at 29-30. The passage erroneously attributed to *Cahlin* reads as follows:

> Pursuant to either reading of [*Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995)] and *Cahlin*, once a plaintiff has demonstrated inaccuracies in the report, a defendant could prevail on summary judgment only if it were to produce evidence that demonstrates as a matter of law that the procedures it followed were reasonable.

*Philbin*, 101 F.3d at 965.

Ironically, however, Experian also misquotes *Cahlin*. According to Experian, the *Cahlin* Court "explained that 'a defendant *could prevail* on summary judgment' based on its reasonable procedures – even if 'a plaintiff has demonstrated inaccuracies.'" *Id.* at 28 (quoting *Cahlin*, 936 F.2d at 1156 & n.7 and adding emphasis). In fact, neither of these phrases appears anywhere in *Cahlin*.

Regardless of each party's errors in quoting *Cahlin*, Plaintiff stands by his reading of this Court's holding there.

asserting that Plaintiff "says because there were mixed-up files, there must have been something Experian could have done differently. But he never says what that something is."); *see also* Experian's Brief at 28-32. But this is not the standard that this Court established in *Cahlin*. The holding there recognizes that, in most cases, once a plaintiff demonstrates that a CRA's reporting is inaccurate, the jury will decide questions of reasonableness, even if the CRA has some evidence that its procedures are reasonable. *Cahlin*, 936 F.2d at 1156. As the Cahlin Court put it, "prior to sending a section [1681e(b)] claim to the jury, a credit reporting agency can usually prevail only if a court finds, as a matter of law, that a credit report was 'accurate'." *Id*.

Other authority is consistent with this understanding of a plaintiff's evidentiary burden under § 1681e(b). A district court opinion from the Sixth Circuit has specifically and unequivocally rejected the proposition that, when bringing a cause of action under § 1681e(b), a plaintiff must provide evidence of specific alternative procedures to rebut a CRA's evidence that its procedures were reasonable. *Morris v. Credit Bureau of Cincinnati, Inc*., 563 F. Supp. 962 (S.D. Ohio 1983); *see also Stewart v. Credit Bureau, Inc*., 734 F.2d 47, 52 (D.C. Cir. 1984) (discussing *Morris* with approval); *Philbin v. Trans Union Corp*., 101 F.3d 957, 965 (3d Cir. 1996) (citing *Morris* with approval). In discussing a § 1681e(b) claim arising from a CRA's creation of a mixed file, the *Morris* Court stated:

11

> We find further ***that it is not plaintiff's burden to suggest ways in which defendant might improve its operation***. Plaintiff has shown that inaccurate information about him was reported by the defendant and we have found from the record that defendant was negligent in failing to reconcile the two files and by not following procedures that would have prevented the re-reporting of this inaccurate information in December. Plaintiff has, therefore, met his burden of proving that defendant did not follow reasonable procedures to assure the maximum accuracy of information reported about him by the defendant.

*Morris*, 563 F. Supp. at 968 (emphasis added). Even though *Morris* is, of course, not binding authority, it is consistent with *Cahlin* and with the holdings of other federal circuit courts that are in accord with *Cahlin. See Philbin*, 101 F.3d at 965.

Contrary to Experian's assertions, this understanding of a plaintiff's evidentiary burden is not contrary to the rule that a § 1681e(b) plaintiff has the burden to prove that a CRA failed to follow reasonable procedures. *See* Experian's Brief at 27-33. The holding in *Cahlin* and the holdings of other federal circuit courts make it clear that a plaintiff can carry that burden by presenting some combination of evidence about the nature of the CRA's inaccuracy and about the reasonableness of the CRA's procedures. As Experian concedes, in some cases, where the inaccuracy was egregious, the occurrence of the inaccuracy can be sufficient, in itself, to permit the plaintiff to carry his burden of proving that the CRA's procedures were not reasonable. *Id*. at 32-33 (citing *Philbin*, 101 F.3d at 965 & n.4 and *Stewart*, 734 F.2d at 51). In other cases, when the inaccuracy is less egregious, and when the defendant

CRA provides some evidence about the reasonableness of the procedures it followed, the plaintiff may need additional evidence beyond the inaccuracy itself to show that the procedures employed by the CRA were not reasonable. *Stewart*, 734 F.2d at 51; *see also Rumbough v. Experian Info. Sols., Inc*., No. 6:12-cv-811-Orl-22DAB, 2014 U.S. Dist. LEXIS 186329, at *22 (M.D. Fla. Jan. 8, 2014) (noting that "Experian presents substantial evidence that it has extensive procedures for assuring the maximum possible accuracy of reported credit information" and therefore that the plaintiff bears the burden to establish that the procedures followed by Experian were not reasonable."); *Johnson v. Equifax, Inc*., 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007) (same). But, as noted above, the plaintiff can carry his burden without "suggest[ing] ways in which the defendant might improve its operation," and a defendant is not entitled to summary judgment whenever it makes any showing that its procedures were reasonable. Because the district court's analysis depends upon a misunderstanding of both Plaintiff's and Experian's evidentiary burdens, its holding is flawed at its foundation.

The district court's erroneous understanding of Plaintiff's burden is highlighted by its decision to deny Plaintiff's request to conduct additional discovery regarding Experian's procedures. As Plaintiff has argued, he was whipsawed by the district court's initial decision to limit his access to evidence about Experian's procedures and its later decision that he was required to produce specific evidence

about what Experian should have done differently. Of course, Plaintiff cannot provide evidence of alternative procedures that Experian might have followed when he cannot conduct thorough discovery about the procedures that Experian actually followed. And, contrary to Experian's arguments, Plaintiff was in no position to file an affidavit under Fed. R. Civ. P. 56(d) because he could not anticipate that the district court would impose an erroneously excessive evidentiary burden. Experian's Brief at 33-37. A transcript of the hearing on Plaintiff's discovery motion is not necessary for this Court to recognize how the district court's misunderstanding of Plaintiff's evidentiary burden undermined its decision to grant summary judgment to Experian.

B. *The record here includes evidence that Experian's reporting procedures were unreasonable because they omitted any auditing or cross-checking function to proactively identify the mixed files that, according to Experian's own admissions, would inevitably be created by its rules for matching consumer information with individual consumers.*

The district court's analysis is also erroneous because, apart from its understanding of the parties' respective evidentiary burdens, it simply disregarded evidence, including Experian's own admissions, which showed that Experian could have done more to prevent the occurrence of mixed files; and this showing was more than enough to create a jury question about reasonableness. In this connection, the district court's error came from its uncritical acceptance of Experian's assertion that its reporting procedures begin and end with the process that it follows to match an

14

item of consumer information with a particular consumer's file. Experian admitted that its matching process inevitably results in a certain number of mixed files; and it further admitted that it does nothing to find or correct those mixed files until a consumer submits a dispute under 15 U.S.C. § 1681i(a). Because Plaintiff submitted evidence to show that there was something that Experian could have done after the matching process and before the dispute process, Plaintiff did enough to create a jury question about reasonableness.

There is no dispute that Experian's matching process inevitably results in a substantial number of mixed files, especially when two different consumers have similar personal identifying information ("PII"), such as their names, and Social Security numbers ("SSNs"), among other things. *See* Plaintiff's Expert Witness Report [Dkt. No. 65-5] at 1-2 (discussing Experian's history of mixed-file problems); Deposition of Christina Hamilton [Dkt. No. 65-2] ("Hamilton Depo.") at 19:16-19 (asserting that it is "next to impossible" for Experian to prevent the errors "that would cause a file to become mixed"). Because Experian must account for the fact that there will be errors in the consumer information that it receives from furnishers, it must devise a matching process, that is sufficiently "flexible" to match an item of information with a specific consumer, even if there is some kind of typographical or transcription error in the furnisher's spelling of a name or in its enumeration of the SSN. Hamilton Depo. at 46:8-15 (admitting that Experian's

matching process "assumes there must be one file and merges the files together.") The matching process must be stringent enough to prevent the problem of over-inclusivity in the compilation of consumer files, while also avoiding the opposite problem of under-inclusivity. *See Id*. The need for this flexibility means that, on a regular bais, an item of information will be matched with the wrong consumer, resulting in a mixed file. *See Id*.; *see also* Experian's Brief at 25 ("To be sure, flexible matching can sometimes create mixed files").

Experian argues that its matching process is unquestionably reasonable because it is consistent with regulatory guidance from the Federal Trade Commission ("FTC"), which recognizes that, in general, it is reasonable for CRAs to maintain some flexibility in their matching rules to balance the risks of both under and over-inclusivity when matching items of information with individual consumers. Experian's Brief at 7-8 (discussing an FTC report to Congress regarding matching requirements); *see also id*. at 24-25 ("Federal and state regulators alike have found that the benefits of flexible matching outweigh its downsides.") (record citations omitted). Experian maintains that its matching process meets the FCRA's standard of reasonableness because it is designed to balance the risks of both under and over-inclusivity. *Id*. at 24-25. On this point, Experian's arguments fail because they depend upon two fallacies.

First, Experian tries to prove the reasonableness of its matching process by trying to substitute a tautology for evidence. Stripped to its essence, Experian's argument is that, under FTC guidance, a reasonable matching process is one that strikes a balance between under and over-inclusivity; therefore, any procedure that strikes such a balance is reasonable as a matter of law. Experian's tautology does not account for the fact that there is more than one way for a CRA's matching process to strike the necessary balance, and it makes no effort to explain how or why the specific process that it has chosen is reasonable. Simply stated, because it depends upon a tautology, Experian's arguments about the reasonableness of its matching process fail to eliminate any question about whether that process is reasonable as a matter of law.

Second, Experian's arguments about reasonableness depend upon a fallacious understanding of the scope of its reporting procedures. In Experian's view, questions about the reasonableness of its reporting procedures begin and end with questions about the reasonableness of its matching process. But other evidence, including Experian's own admissions, shows that compiling a consumer file and preparing a consumer report can involve more than just the initial process of matching items of information with consumers. Plaintiff's expert opined that CRAs have the capacity to audit and cross-check their existing files to identify potential problems and that Experian has implemented auditing and cross-checking procedures to review its

existing files for errors before consumers submit disputes that point to those errors. Plaintiff's Expert Report [Dkt. No. 65-5] at 5-6. Plaintiff's expert also noted that Experian simply chooses not to audit or cross-check its files to identify any of them that might be mixed. *See Id*. Moreover, Experian admits that its process for compiling and maintaining consumer files involves more than just matching items of information to a consumer file. *See* Hamilton Depo. [Dkt. No. 65-2] at 18:6-15 (discussing the "background processes" that Experian uses to check established consumer files). Plaintiff's expert evidence and Experian's admissions combine to support a finding that there are procedures that Experian could follow to identify at least some of the mixed files that are an inevitable product of its "flexible" matching process. On that basis, a jury could also find that, regardless of whether Experian's matching process is reasonable, its overall file compilation and reporting process is unreasonable because it deliberately omits the kind of cross-checking or auditing that could uncover mixed files before they cause problems for consumers and users.

The decision in *Morris, supra*, is instructive on this point as well because the district court there recognized that a CRA's reporting procedures could be unreasonable if they omitted any auditing or cross-checking to detect mixed files. As noted above, the plaintiff in *Morris* alleged that a CRA violated § 1681e(b) by making two mistakes in the compilation and reporting of his consumer file: splitting his consumer information into two separate files and adding information from

another consumer to one of them so that it was a mixed file. *Morris*, 563 F. Supp. at 964-65. Specifically, one of the two files erroneously included information about the plaintiff's wife from a period before her marriage to the plaintiff. *Id*. With respect to the issue of reasonable procedures, the CRA in *Morris* made the same argument that Experian makes here, contending "that it initially had no way of knowing there was any problem with the information reported about [the plaintiff]" and that "[o]nce it was notified in April of 1980 that the bankruptcy and unpaid accounts did not belong in the file of [the plaintiff], that information was deleted and no longer reported to any creditor requesting information about [the plaintiff]." *Id*. at 967-68. The district court rejected this argument out of hand, stating that "[w]e find that a reasonably prudent credit reporting agency would have procedures to detect the similarities in the two files that would have prevented further reporting of inaccurate information." *Id*. at 968. In reaching this conclusion, it specifically faulted the CRA for not having adequate auditing procedures as part of its file compilation and reporting process: "[d]efendant does have a procedure whereby it scans files twice a year to determine whether it has more than one file on a person but this procedure clearly is not adequate to prevent the problems that arose in this case." *Id*. Interestingly, although Plaintiff discusses *Morris* at some length in his opening brief, Experian has nothing to say about its holding. *See* Plaintiff's Opening Brief at 42-43.

19

There is also evidence to support Plaintiff's showing that it is especially unreasonable for Experian to lack auditing or cross-checking procedures and to rely solely upon consumer disputes as its means of identifying mixed files. Experian admitted that it first combined information for Plaintiff and his brother in 2005, and their information remained mixed for nineteen years before Plaintiff submitted his dispute. Experian's Statement of Facts [Dkt. No. 71] at ¶ 22. Plaintiff never submitted a dispute until 2024 because he was unfamiliar with the business of credit reporting and did not even know that Experian existed until he sought legal advice shortly before filing his Complaint in this case. Plaintiff's Deposition [Dkt. No. 65-1] at 77:2-81:4. A jury could find that it is unreasonable for Experian, which is in the business of information management, to rely on consumers to identify deficiencies in Experian's performance of its core business functions, especially when there are many consumers who, like Plaintiff, lack knowledge about the business of credit reporting.

The district court failed to recognize that Plaintiff's evidence about alternative procedures because it adopted Experian's fallacious equation of its matching process and its reporting procedures. The district court concluded that Experian's reporting procedures were reasonable because it would be impossible for any CRA to implement a matching process that would have prevented the mixing of information for Plaintiff and his brother, given that their names and SSNs were so similar.

Summary Judgment Order [Dkt. No. 82] at 4-5. As the district court put it, "I conclude as a matter of law that a policy is not unreasonable simply because it allows records to be associated with an individual's credit file with one SSN digit off, particularly when there are other matching indicators." *Id*. at 5. But this conclusion depends upon the presumption that the only procedures relevant to a § 1681e(b) claim are the procedures for matching items of information with individual consumers. The district court did not recognize that the auditing and cross-checking procedures discussed by Plaintiff's expert could be considered as part of the reporting process. *Id*. at 5-6.

Moreover, the district court misread established case law to support its presumption that, as a matter of law, a CRA's duty to follow reasonable reporting procedures does not go beyond the initial matching process. Summary Judgment Order [Dkt. No. 82] at 7 n.4. In this connection, the district court cited several cases, most notably *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) to stand for the proposition that § 1681e(b) does not give CRAs any duty to audit or review their files to discover any of the problems that inevitably result from the matching process. *See* Summary Judgment Order [Dkt. No. 82] at 7 n.4 (citing cases). But the district court's cited cases address a different kind of accuracy problem than the one presented here.

For example, in *Losch*, the inaccuracy at issue was supplied by a furnisher, and the *Losch* court concluded that "a reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable." *Losch*, 995 F.3d at 945 (citing *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004)). Thus, the *Losch* Court concluded that CRAs need not flyspeck each item of information in each consumer file because "examin[ing] each report individually for errors would be unduly costly;" the *Losch* Court also concluded that it is reasonable for CRAs to wait for notice from consumers about inaccuracies in individual items of information from usually reliable furnishers. *Losch*, 995 F.3d at 945. But a CRA can audit or cross-check for mixed-files without the kind of flyspecking discussed in *Losch*. And Experian certainly has notice that its matching process results in mixed files as a matter of course. Indeed, for this case, the most relevant aspect of the *Losch* decision is its principle that CRAs have a duty to look for inaccuracies once they know that such inaccuracies exist. Here, there is no dispute that Experian knows that it regularly creates mixed files, but it does nothing to look for them after the matching process and before a consumer has been harmed by one.

A jury must decide whether it is reasonable for Experian to simply do nothing to mitigate the mixed-file problems that are the inevitable consequence of its matching rules. As with other questions about reasonableness, this one implicates an

assessment of the costs and benefits of having such auditing or cross-checking functions. And, as this Court and other federal courts have long held, such an assessment is uniquely the province of a jury. *Cahlin*, 936 F.2d at 1156 (holding that the reasonableness of a CRA's reporting procedures "will be a jury question in the overwhelming majority of cases"); *see also Stewart*, 734 F.2d at 51; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 224-25 (3d Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994).

**II.    A jury could find that Experian was liable for a willful violation of § 1681e(b) because it deliberately omitted any procedures to audit or cross-check for mixed files while knowing that mixed files were an inevitable consequence of its matching process.**

Experian's argues that it cannot possibly be liable for a willful violation of § 1681e(b) by relying upon one of the same fallacies that undermined its arguments regarding reasonableness. Experian insists that its matching process cannot reflect a reckless disregard of its statutory duties because that process is consistent with industry standards and administrative guidance, both of which have endorsed the general concept of "flexible" matching. Experian's Brief at 38-40.

This argument fails because it attempts to sidestep the question whether it was reckless for Experian to omit any kind of auditing or cross-checking for mixed files when it knew that its matching process necessarily produced a substantial number

of mixed files. If a jury finds that Experian's omission is unreasonable, it could also find that it reflects a reckless disregard of a known and substantial risk of inaccuracy that was inherent in Experian's matching process. More specifically, a jury could find that, when omitting any kind of auditing or cross-checking from its reporting procedures, Experian knowingly ran an excessive risk of maintaining inaccurate consumer files and issuing inaccurate consumer reports and that such knowing conduct reflected more than mere carelessness. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

Experian also argues that its failure to maintain separate files for Plaintiff and his brother cannot be willful or reckless because their information "had been comingled from the beginning and repeatedly confused by furnishers thereafter— [and] could not be distinguished on paper." Experian's Brief at 39. This contention is simply absurd. Plaintiff and his brother are not indistinguishable – not in real life and not on paper. Despite the similarities in their names and SSNs, their identifying and credit information can be distinguished. Indeed, after nineteen years of confusing them, even Experian is now able to determine which items of information belong to which brother, and it has maintained separate files for them, by applying its "Do Not Combine Rules." *See Id*. at 2. Thus, it is not impossible for Experian to tell Plaintiff and his brother apart; Experian simply chose not to take the necessary steps to do so until Plaintiff filed his dispute. Here again, a jury could find that

Experian's knowing choice was reflected a reckless or willful disregard of the FCRA's requirements.

**III.  Plaintiff had sufficient evidence to permit a jury to find that Experian's mixed-file inaccuracies were, the very least, a substantial factor in adverse credit decisions, emotional distress, and reputational injuries.**

Experian does not dispute that, for nineteen years, its reports about Plaintiff included debt owed by Plaintiff's brother as well as Plaintiff's own debt. Nevertheless, both Experian and the district court disregard the obvious implications of this undisputed fact, insisting that Plaintiff cannot prove that this gross exaggeration of Plaintiff's debt contributed to any adverse credit decisions. More specifically, Experian and the district court believe that Plaintiff cannot link this exaggeration to the adverse credit decisions made by Citibank and Capital One because the denial letters from Citibank and Capital One both cite insufficient income as the reason for the denials and because insufficient income can be an independent factor in credit decisions, even when not considered in comparison to a consumer's total debt. Experian's Brief at 41-42.

The district court and Experian are wrong because it overlooks the principle that a jury can find damages causation from an inaccuracy whenever that inaccuracy was a substantial factor in an adverse credit decision. *See Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1365-66 (N.D. Ga. 2005) *aff'd*, 164 F. App'x 914 (11th Cir. 2006). As Plaintiff has noted, *Enwonwu* holds that a plaintiff can establish a

causal link between a reported inaccuracy and an adverse credit decision as long as the inaccuracy could be "considered a substantial factor in bringing about the denial of credit." *Enwonwu*, 364 F. Supp. 2d at 1366 (citing KEETON, ET AL., PROSSER AND KEETON ON TORTS § 41, at 266-68 (5th ed. 1984)). On their face, the denial letters from Citibank and Capital One are enough to permit a jury to infer that he exaggeration of Plaintiff's total debt load was a substantial factor in adverse credit decisions.

That same principle also explains why those adverse credit decisions can be traced to Experian's inaccurate reporting, even though neither Citibank nor Capital One identified Experian as the primary source of credit information. Experian contends that Plaintiff lacks evidence to show directly how Experian's reporting influenced those adverse decisions. Experian's Brief at 42. But Plaintiff did have evidence to show that Experian's reporting was published to Capital One and to Exeter Finance, LLC in connection with his credit applications, and there is no dispute that Plaintiff received adverse decisions on both of those applications. Consequently, there is enough evidence to permit a jury to find that Experian's inaccurate reporting was a substantial factor in those adverse decisions, regardless of whether either creditor identified Experian as a primary source.

Experian also fails in trying to finesse its way around the evidence showing that Plaintiff suffered emotional distress damages. According to Experian, Plaintiff

cannot prove that Experian's inaccurate reporting caused Plaintiff any emotional distress because Plaintiff's testimony shows that he was distressed by the credit decisions themselves, not specifically by the reporting that contributed to those decisions. Experian's Brief at 44-45. This is a distinction without a difference, and the "substantial factor" analysis applied in *Enwonwu* applies to this point as well. Regardless of whether Plaintiff had specific knowledge of what Experian reported or even of what Experian is, Experian's reporting is still a substantial factor in causing the emotional distress that followed his credit denials. Consequently, Experian's reporting has a sufficient causal relationship to Plaintiff's emotional distress damages, and the district court erred in ruling otherwise.

Finally, Experian tries to argue that Plaintiff has forfeited his right to claim any reputational damages, even nominal ones, because he did not sufficiently raise this issue in the district court. Experian's Brief at 45-46. To make its point, Experian focuses on the term "nominal damages," which Plaintiff used in his opening brief in this Court but not in its summary judgment briefing in the district court, maintaining that Plaintiff cannot argue for nominal damages here because he did not do so below and because the FCRA does not provide for nominal damages. *See id*.

Experian's argument fails because it disregards the record and the law. First, Plaintiff did raise the issue of reputational damages in the district court, and he specifically argued that he necessarily suffered damages because he suffered

reputational harm when Experian repeatedly published false information about him over nineteen years. Plaintiff's Response in Opposition to Experian's Motion for Summary Judgment [Dkt. No. 75] at 22-23. Plaintiff emphasized that he had a compensable injury because of the reputational harm that necessarily followed Experian's false statements about his credit history. *See Id*. On appeal, Plaintiff elaborated on this point by drawing an analogy to the common law of defamation, which makes it clear that reputational harm always leads to damages, even if they are only nominal; and Plaintiff noted that, in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021), the Supreme Court held that the reputational injuries cognizable under the FCRA are akin to the injuries for common-law defamation. Accordingly, Plaintiff did not, as Experian asserts, raise the issue of reputational damages for the first time in this Court. Moreover, *Ramirez* supports the proposition that FCRA plaintiffs can be entitled to the kinds of reputational damages recognized for common-law defamation. In this respect, Plaintiff is merely supplementing and expanding his legal arguments for his entitlement to reputational damages, and there is no forfeiture or waiver in that kind of argumentation. *See Bradshaw v. Reliance Standard Life Ins. Co*., 707 F. App'x 599, 605 (11th Cir. 2017) ("A party may take a 'new approach' to an issue preserved for appeal; she may improve how she articulated the same arguments when she was before the district court, and a good attorney often does.").

## CONCLUSION AND RELIEF REQUESTED

A jury could find that Experian acted unreasonably by adopting reporting procedures that did not address or mitigate a well-known, pervasive problem with its process for matching items of consumer information with individual consumers. A jury could also find that Plaintiff was entitled to damages as a result of Experian's unreasonable procedures because Experian's knowing omission of any auditing or cross-checking procedures reflected a reckless disregard of its duties under § 1681e(b) and/or because Experian's inaccurate reporting about Plaintiff was a substantial factor in causing adverse credit decisions, emotional distress, and reputational harm.

Accordingly, Plaintiff asks this Court to reverse the district court's order denying its motion for partial summary judgment and granting Experian's motion for summary judgment. In the alternative, Plaintiff asks this Court to vacate that order and remand the case with instructions to have a jury determine whether Experian's mixed-file procedures were reasonable and the extent to which Plaintiff was damaged by Experian's inaccurate reporting.

Dated: December 5, 2025      */s/ Tarek N. Chami*
Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488

E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
E: ctillman@consumerjustice.com

*Attorneys for Appellant Brendon Lavantia Garrett*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

**1.     Type-Volume**

This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 5,818 words.

**2.     Typeface and Type-Style**

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Dated: December 5, 2025          */s/ Tarek N. Chami*
Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
E: ctillman@consumerjustice.com

*Attorneys for Appellant*
*Brendon Lavantia Garrett*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users, or that I will accomplish service by U.S. Mail for those participants that are not registered CM/ECF users.

*/s/ Tarek N. Chami*
Tarek N. Chami

*Counsel for Appellant*